The next argued case is number 17, 1866, Emerson Electric Co. v. SIPCO, LLC. Mr. Dreimeier, when you're ready. May it please the Court. Doug Holder, Dreamer, on behalf of Emerson Electric. The evidence showed two different grounds on which someone known to the art would have been motivated to combine the Kahn reference with the admitted prior art in the 732 patent. The two motivations were the flexibility to redeploy easily and rapidly the admitted prior art with the wireless technology provided by Kahn, and then the cost savings of doing so because you would not need to utilize the wires and the installation that was a very costly endeavor. The Board rejected both of those motivations to combine. That finding lacks substantial evidence. First of all, on the record before the Board, it was notable that in the institution decision, the Board recognized that we had demonstrated the motivation to combine at the least on the cost savings measure. The Board recognized that in the admitted prior art, it was a recognition that there was a description in the admitted prior art to the saving of the expensive proposition of the wiring of existing facilities. The installation of the wires. That doesn't bind them as they proceed, so let's talk about what they finally did at the trial and decided. In the final written decision, they rejected that very same evidence on the ground that it was hindsight. It's not hindsight, Your Honor. It's permissible to point to where the inventor has acknowledged that there is already a well-known need and problem. Let me stop you there. There's no doubt at all that the patent says the wired system is expensive. I don't actually think it says, and everybody knew that. I also have been having a hard time finding in your petition the assertion that the patent not only says it's expensive, but also admits that the prior art recognized the costs. Which accounts, I think, for the fact that the Board never addresses a contention because I don't really think there was one that the patent itself contains an admission about prior art knowledge. Well, Your Honor, in the HEPI declaration at paragraph 30, there was a reference to... Is that page 435? That's 435, yes, in the appendix. There's a reference to column five, lines 48 to 61, and specifically HEPI draws from that the conclusion that the applicants note the expense of connecting the sensors and actuators with the local controller. So there, HEPI is acknowledging that they're in the description, this is in the background section of the admitted prior art... On column five? In column five. Column five is the detailed description of the... I'm sorry, there's another reference earlier in... Which one did Mr. HEPI refer to? He referred to column five there for the purpose of establishing it was an expensive proposition. It's the same language that the Board relied on in its institution decision. It's also the same language that the Board has relied on since in the decision in the 780 patent to establish that the patent itself, the 780 patent, which has the exact same language as the language that we relied on here in the 732 patent, establishes that this was known to those who were knowledgeable in the art at the time. This is a question of fact on which the Board cannot hold at the same time both proposition not X and X. It seems to me that you were quite right to start your argument by saying the Board, that you had two theories for why there was a motivation to combine, both basically rooted in con. One had to do with cost, the other had to do with flexibility and rapidity. And I was actually particularly interested in the flexibility, rapidity. Can you address that and then we can talk about the relationship between this case, which I think is actually, at least to my mind, painfully complicated, and the October 25th, 2017 decision in the 780? Is that what the 780 patent is? You're right with respect to going to the con prior art and what it demonstrated and disclosed about a motivation to combine, because it doesn't present some of these questions about whether the description of the expense in the APA discussion reflects knowledge of those knowledgeable in the art, because con itself calls out the desirability of the flexibility, rapid redeployment, and reconfiguration that was possible with the mobile systems that were disclosed by con and that were not possible with fixed plant systems. And so con specifically contrasts these two systems, the mobile system that con is describing and existing fixed plant systems. The Board rejected that in the final written decision because, in their language, con did not specifically tie this concern to physical cables and wires. But in this language, con, although he doesn't use those words, there is no requirement that he use magic words. That's the kind of rigid application that the Supreme Court rejected in KSR. In your view, it must be your view because you began your argument this way, that these points about costs of installation is a distinct point from flexibility and redeployment. I think that they are interrelated, but one supports the other. But I do think that each could stand alone independently. And con very clearly talks about the flexibility and rapid deployment and reconfiguration not currently possible with most fixed plant systems. And that's con 1469, column 1. That's A377. That specific language is called out in the HEPI declaration. It's quoted at paragraph 31 of A436. And he really calls out the fact of this contrast between the mobile systems and the fixed plant systems. And what that discusses is... What did the board say about that? It's 11 and 12 of its opinion. The board simply... From cost to flexibility. What does it say? The board simply says that it rejects this because, quote, petitioner does not identify discussion of physical cables or wires in con. That's at A11. So although we've put forward the motivation for flexibility, and they don't dispute that flexibility, rapid redeployment would be a sufficient motivation. They simply say con doesn't describe that because it doesn't talk about the problem of wires. But in that passage that I've just quoted, and that's clearly there, relied on in the petition, relied on in the HEPI declaration, calls out the benefits of the mobile system as compared to the fixed plant installations. Mobile refers to wireless. Fixed plant installations refers to wire. That is a reference to wire if one was necessary, even though we don't think one is necessary. Can I now take you back to this, at least to my mind, quite troubling circumstance of the October 25th decision? And I guess I have a variety of questions. One is, are we allowed under the APA if we were so inclined? Can I put one thing to one side? Assume for purposes of this discussion that the board was permissively said, we've got to ignore greaves, came in too late. The other proceeding had greaves, so let's just assume that those two are different. The other proceeding, the board wrote an opinion that invoked greaves three or four times, each time with words like confirmation, support, corroboration, leaving at least me unclear whether without greaves that particular decision would have come out any differently. Leaving, therefore, the question whether, again, putting greaves, if greaves was only confirmation, is there an unexplained inconsistency between these two decisions? Is there something we can do about that? Well, I think there is. I think the court should, at the very least, vacate this and remand it to the board to explain that. So how do we do that under the APA? Last year, we had a decision called VICOR against SINCOR in which there were simultaneous board decisions that, among other things, we remanded for reconsideration because we weren't seeing the explanation for a disparity in results. Simultaneous is maybe different, but from what we have here, which is a later decision, we did cite a DC Circuit decision from 1975, notably in the pre-Vermont Yankee era, that I think, as I read it, remanded NLRB ruling number one because later ruling number two came out and there seemed to be a disparity and the DC Circuit said, you've got to tell us how to relate these. And the thing that I'm worried about, maybe you can help me with, is that as I understand the APA and law under it, we're required in an adjudication, which this is, to evaluate the agency decision solely on the record in this adjudication. How do we look at some post-adjudication development? Well, although that's true, Your Honor, in APA review, one ground on which to challenge it is that the agency has acted in a manner that's arbitrary and capricious and one basis on which to establish that the agency has acted arbitrarily is that the ruling in this case is inconsistent with the ruling in another case. Granted, in most instances, it would be an earlier case. Do you have any authority for the later one? I have not found that, but I will note that the court does now have both the 732 decision and the 780 decision before it because there has been a notice of appeal filed in the 780 case. And so we are in a situation in which both of those decisions are presently before the court at the same time. The 780 is not fully briefed yet. This is a related question. I realize it's getting ahead of things. Suppose that we were to affirm this decision and it becomes final. Would that generate issue preclusion for the 780 decision? Well, I assume that in that instance, we would be citing to the fact that they relied on grieves there. Right, but issue preclusion doesn't mean you get to do a better job the second time than you did the first time unless there was some impediment to your having done a better job the first time, which there wasn't. You just didn't get to grieve. Well, I think it would depend on what one thought the subsidiary facts were that were found. But I do think that that prospect only heightens the need to correct the error here. And I will point to the fact that grieves, although it was not cited in the reply, it was part of the record. You mentioned that the court has to review the record, the administrative record. The administrative record here includes grieves because it was submitted by the patent owner, so they can't claim surprise. On page one of grieves, the same page that is cited by the patent owner, it discusses the fact that cost savings in applying wireless technologies to systems related to monitoring water plants has been established. So that's on their own evidence. What they have said with respect to the admitted prior art, Your Honor, is that, no, that's not a discussion of what was known by others. That's a discussion of what our inventor discovered. He discovered that wires are costly. Their own evidence disproves it. And I think that it was not reasonable. It was, in fact, arbitrary and capricious for the board, having evidence submitted by the patent owner themselves, that disproves that very assertion by them about what's disclosed in their patent. To have ignored that, as opposed to relying on it, as they did in the 780, is merely confirming what it is that the APA, discussion of the APA, already seems to say. But apart from that, even, the fact that in the 780, the board refers to the same quote from Kahn about flexibility and redeployability, and acknowledges that the reference to mobile means wireless, and the reference to fixed plant installations means wired, cannot be squared with their refusal to acknowledge the force of the same language when cited in this case, because, on their explanation, Kahn doesn't refer to cables and wires. It did. And their later ruling acknowledges that very fact. So I see that my time is almost up. I hope to reserve a little bit more. We'll save your rebuttal time, Mr. Dornier. Mr. Gonsalves. Good morning, Your Honor. My name is Dr. Gregory Gonsalves, and I'll be representing IPCO before this proceeding today. The board actually did a very careful analysis of Dr. Heppe's testimony. It even copied a portion of Dr. Heppe's declaration, paragraph 31, right into its final written decision. And then it went through point by point at the portions of Kahn that Dr. Heppe referenced, and explained why that would not provide a motivation to combine Kahn's teaching of a packet radio network with the prior art, which is a wired system consisting of a local controller, sensors, actuators, and repeaters. The board did a very careful analysis. If you look at the final written decision at page 10, it indicated that Kahn does not discuss costs related to installation of wiring. And it's little wonder why the board made that observation, because Kahn nowhere mentions a sensor or an actuator at all throughout its disclosure. There's not one mention of a control system containing one sensor or one actuator. Kahn was based upon mobile devices that people can carry around in their pockets. It wasn't directed to what is in the discussion of the prior art and the 732 patent, which is a hardwired network of sensors and actuators with a local controller. And he talked about the types of systems in the prior art in the discussion of the 732 patent that it's directed to. It's directed to air conditioning systems, for example. Now, air conditioning systems are not the type of mobile devices that was the subject of Kahn. Kahn talked about having a packet radio network for mobile devices, not for air conditioners. I mean, my air conditioner isn't mobile, for example. And the other things that Kahn talks about that the board specifically discussed is he's talking about delay, throughput, and cost that are intricately related, because lower delay usually means higher data rates, which in turn implies higher throughput and greater cost. That has nothing to do with taking a wired network of sensors, a local controller, an actuator, and a repeater and motivating a person of ordinary skill in the art to change that to use a packet radio network. The board also acknowledged that Kahn speaks to cost associated with providing a sufficient number of relays in order to provide adequate coverage in a particular area and notes that this cost could be acceptable if the user population is sufficiently dense. That passage is also not directed to motivating a person of ordinary skill in the art to converting to a packet radio network. It's talking about how many relays that a network engineer would place in order to make sure that there was appropriate coverage for the people having mobile devices. Kahn also states that all routes in a passage that was referenced by Dr. Heppe, petitioner's expert, all routes are assigned by the station to minimize packet radio cost and complexity. But that was directed to where you're going to put the processing power and software in order to do routing in the network. For instance, if you had it in the packet radios, then each packet radio would have to have the processing power and the software in order to determine how to route messages in the network. But if you move that to the station, then each packet radio wouldn't have to have that hardware and software, thereby making the packet radio less expensive. So many of these passages that are referenced by Dr. Heppe and Kahn do not relate and would not motivate a person to moving toward a packet radio network. What about the language at appendix 378 under rapid and convenient deployment that talks about deployment of the packet radio net should be rapid and convenient requiring little more than mounting the equipment at the desired location. Why does that not suggest the lack of wires? And something mounted as opposed to in your pocket. Okay, so there's two different concepts. One is the end device. So the reason why you have a network is for a purpose. It has to communicate certain information. So you have to separate the packet radios that are in the network from its ultimate purpose. In Kahn, the ultimate purpose was to provide a packet radio network for people that had mobile devices, devices that they could carry. So that passage that you just referred to is in the context of people having mobile devices. It's not in the context of the prior art that was described in the 732 patent, which is air conditioning systems or other systems that need to be controlled which aren't mobile. So you have to separate the devices in the network from the devices that the network is supposed to support. In Kahn, the devices in the network are supposed to support mobile devices that can be carried by people. In the 732 patent and its description of the prior art, the network is supposed to support sensors and actuators, which are not mobile. Because you're saying this when it talks about mounting the equipment. That's not talking about mounting sensors. So what if ordinary people in the yard wouldn't put the two together? Absolutely not, because there's no mention of a sensor or an actuator anywhere in Kahn. The mounting on the wall refers to packet radios that are part of the packet radio network. You can put an antenna and a packet radio on there so people with mobile devices could communicate with it. But the entirety of Kahn, and one of the reasons it doesn't provide the motivation to modify the prior art system of a wired system of sensors, actuators, and a local controller, is because Kahn is directed to a completely different context. It's the context of supporting the end user in Kahn is people that have mobile devices. There's no mention of a, and you can do it yourself, you have a soft copy, electronic copy of Kahn, do a search on sensor, do a search on actuator, you won't find any hits, because that's not what the article is directed to. Can you address what, if anything, we should do with the 780 patent IPR decision from the end of October? I don't mean what we should do in the appeal of that, I mean what we should do here about analysis in that decision that, on a number of points, seems to draw quite different conclusions from some of this art, even putting aside Greaves, than the conclusions that the board drew here. Well, I think in that decision with respect to the other patent, that the record was very different in that case. It wasn't just Greaves, but there were different expert declarations, obviously the claim is different. There are a lot of differences between that case and this case. And so I don't think the decision in that case, which we're also appealing on different issues, bears here, because I think, from what I just told you, there is no motivation to combine teachings of a packet radio network with the prior art in the 732 patent, which was a hardwired system of sensors and actuators. The other mistake that was made, in fact, in this case, Dr. Heppe, his position is based upon multiple errors that he made. For example, he mistakenly referred to a discussion of the application of the principles of the invention of the 732 patent to a remote irrigation control system as being prior art. It clearly wasn't. It wasn't anywhere near the background section, which talks about the prior art. He also mistakenly referred to a discussion of an application of the principles of the invention to an automated parking system as being prior art. Again, that was in column 13 of the patent. That was nowhere near a discussion. So the petitioner's position here is based upon expert testimony that is flawed and that was shown to be incorrect by our expert, Dr. Almoroff. Again, when Dr. Heppe reads the 732 patent and he indicates that there was an admission by David Pettit, the inventor of the 732 patent, that these problems with the WINE system were known, that's also inaccurate. If you look at the patent and read it carefully, the inventor, David Pettit, is describing a prior art system of hardwired sensors, actuators, and a local controller, but at no point does he ever say that the problems with that particular prior art system were known. This is something that David Pettit recognized himself and what motivated him to come up with the claimed invention. Can I go back to the question I asked you about 780? You said something about the expert testimony there being different. I guess I'm just looking at the 780 final written decision and there are big block quotes from Dr. Heppe about Kahn. How is he saying anything there different from what he said here? I think there probably are some similarities, but I think that the declaration that he submitted in that case... As a procedural matter, do you have any views about... Except for obviously the difference between Greaves being in one and not in the other, but Greaves is talked about in the 780 as confirmation, support, corroboration. It's not talked about as essential. Suppose one of the things we were scratching our heads about is how could this board panel say what it said there and say what it said here? We sure would like them to explain that. Can we? I don't think that would be appropriate. The reason is because the record in this case is different from the record in the more recent case. You mentioned Greaves, for example. In fact, if you look at the opinion that came out in the more recent case, the judge that wrote that opinion specifically indicated that Greaves was of record in that case and Greaves was not of record. Footnote 9 says difference. Too late in the old one, not too late here. So the record is very different, and I don't think Greaves was just confirming. I think they heavily relied on Greaves in the most recent decision to say that there was a motivation to combine a packet radio network with the discussion of the hardwired system of the prior rod and the 732 pad or the 780 pad. I think that the records are very different. They're two different records. I think the judges there in the more recent decision explicitly indicated why the records were different and why there was a different decision reached in that case than in this case. And we also believe, and I'll also be making some of the same arguments, that we believe the board erred in that more recent decision. If there is some problem of confusion about whether there's consistency, do we have within our authority the power to remand this one to have the board clarify? And it could clarify by saying, oops, we were wrong in one or the other, or it could say, no, no, here's the crucial difference, without prejudging what they would do in response to a remand to explain the relation between the two cases. Well, I think the board has already indicated in its final written decision in the more recent case. It was a procedural. It did not make it. Only the procedural point that Greaves is in one and not the other. Well, I think it's saying that it did not make a mistake in this case that's before you. It said that under the record that was before it in this case, they ruled correctly. It's in that footnote that the board mentioned. So on this record, in this case, I think it's clear with all the mistakes that Dr. Heffy made as to what was known in the prior art and what wasn't known in the prior art, as well as Kahn being directed to users, the end users having mobile devices, very, very different. It doesn't mention a sensor or an actuator. Very, very different from the systems that's described in the 732 patent as being prior art, which is things like air conditioning systems and other types of control systems that need to be monitored via a network. I also think it's clear that Greaves should not be considered in this proceeding because the first argument that was made with respect to Greaves was not made until the oral hearing. And there, only one paragraph of Greaves was mentioned. In the briefing before this court, many different parts of Greaves were mentioned in the briefing from the petitioner. So that's wrong for two reasons. Number one reason for not, I think the board was correct in not considering it at the PTAB because it's clear from the decisions of this court, like the Dell case, for example, that raising an argument at the oral hearing is too late. And it doesn't depend on the content of the argument, as the petitioner suggested. Rather, it depends on when the argument was made. If you make it for the first time in the oral argument at the PTAB, it's too late. The Greaves was introduced as a reference to show that wireless networks had problems with delays, and that was put in our patent owner response. The petitioner had an opportunity when it filed its reply, or when it filed its supplemental expert declaration with its reply, to address that. If they would have addressed it, then we could have asked the board to file a SIR reply, or I could have asked Dr. Heppe questions about it at his deposition on his supplemental declaration. It didn't do that. It didn't give any reasons why it didn't mention anything about Greaves in the reply or in their expert supplemental declaration. So it's too late to raise it at the oral hearing at the PTAB. And it's also much too late to raise arguments directed to portions of Greaves that weren't even mentioned below at the PTAB here in the briefing. So without Greaves, and just relying on Dr. Heppe's declaration, which relies on Kahn and what the 732 patent itself discloses, there's not nearly enough evidence to show that the board erred in its factual finding. Okay, let's move on with this case. We'll hear some rebuttal, and then we'll continue the discussion with the next case. Thank you. Mr. Hull, we're driving there. Thank you, Your Honor. First, I want to provide the citation to where in Heppe's declaration there was a citation to the background discussion of cost in the 723 patent. That is Heppe paragraph 38, and the citation is to the discussion of the APA at column 2, lines 37 to 43, which references the expense of connecting functional sensors with the local controller. So there is a reference to cost even there in the background section, but I apologize it was the other that the board had relied on in the institution decision. With respect to the different record, Your Honors, I have reviewed very carefully the discussion both of the Kahn motivation, flexibility, and rapid redeployment on pages 40 to 41, a paragraph that carries over between those two pages, and every quotation, citation to Kahn or to the Heppe declaration in that paragraph appears verbatim in the discussion, or those citations appear similarly here in this case in the Heppe declaration and the quotations that were offered. Likewise, with respect to the discussion of cost on pages 44 to 45, it's a description of the same provisions in the 780 patent that were cited in that case, as are also cited in this case where they appear in the 732 patent. And it's also about sensors, the 780 patent. Yes. First, I guess I wanted to point out that with respect to Kahn, the patent owner does not defend the rationale of the board, that somehow Kahn doesn't discuss this because Kahn doesn't reference physical cables and wires. That was the reasoning of the board. The patent owner tries to suggest a different argument, which is that Kahn can't be physically incorporated in toto into the admitted prior art, but that's not the test. This court rejected that test in Muttet. And so it doesn't matter that Kahn doesn't talk about sensors and actuators. What it talks about is the desirability to use a wireless network to achieve the goals of flexibility, rapid redeployment, and the like. And that could be used on a mobile system as some of the prior art, or a fixed system that's just geographically distributed as some of the other admitted prior art. In the end, we think that the board's rejection, especially of Kahn, and the basis of that rejection, which is that he didn't discuss physical cables or wires, cannot be squared with the evidence that was before them. The record reflected that they had before them the references in Kahn, both the one that I cited earlier about the physical fixed plant installations, but also the other reference that Your Honor cited that talks more generally about the desirability of this for mobile applications. And for them to say that Kahn doesn't teach what it plainly does teach because it doesn't specifically reference wires, when it talks about a fixed plant installation that is a wired installation, does not provide substantial evidence for their ruling. And it should be reversed on that ground. If there are no further questions, thank you, Your Honor. Is this case as concerned? Okay, thank you. We will go on to the next case. No need to move. If you can stay put, we'll move it straight.